UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

ANDREW KIM,

                Plaintiff,

v.

CENTRAL MICHIGAN UNIVERSITY,

                Defendant.
_____/

Case No. 23-cv-
Hon.

ERIC STEMPIEN (P58703)
STEMPIEN LAW, PLLC
Attorneys for Plaintiff
38701 Seven Mile Rd., Suite 130
Livonia, MI 48152
(734)744-7002
eric@stempien.com
_____/

**COMPLAINT AND JURY DEMAND**

Plaintiff, Andrew Kim, by and through his attorneys, Stempien Law, PLLC, hereby complains against Defendant Central Michigan University and in support thereof states:

1. Plaintiff Andrew Kim ("Kim") or ("Plaintiff") is a resident of the City of Mount Pleasant, Isabella County, Michigan.

2. Defendant Central Michigan University ("CMU" or "Defendant") is a public university established by the statutes of the State of Michigan which has its principal place of business located in the City of Mount Pleasant, Isabella County, Michigan.

3. Jurisdiction is vested in this Court by 42 USC §1983 and 28 USC §1343, as this is a civil action arising under the laws of the United States. This court has pendent jurisdiction pursuant to 28 USC §1367 over Plaintiffs' state law claims.

4. The events giving rise to this action occurred in the Eastern District of Michigan.

## **GENERAL ALLEGATIONS**

5. Kim's national origin is Korean and his race is Asian.

6. Kim is employed by CMU as an Assistant Professor in the Department of Public Health within CMU's School of Health Sciences.

7. Kim teaches and conducts research within the Masters of Public Health Program at CMU.

8. As part of his research work, CMU provided Kim a dedicated source of funds for expenses related to his research.

9. In 2020, Kim became aware that some of the funds in his research account had been misappropriated.

10. Starting in August 2020, Kim began reporting the misappropriated funds to his superiors at CMU.

11. On or about August 28, 2020 Kim reported the misappropriated funds to Dr. Jeffrey Betts, who at the time held the position of Chair of the School of Health Sciences.

12. Dr. Betts recommended that Kim report the issue to Dean Thomas Masterson, the Dean of College of Health Professionals, which is the

13. On or about September 2, 2020, Kim met with Dean Masterson and reported the misappropriation of his research funds.

14. On or about October 5, 2020, Kim met again with Dean Masterson about the misappropriated funds. At the October 5 meeting, Dean Masterson indicated that he had spoken to Dr. Joseph Inungu, who is the Master of Public Health Program Director. Dean Masterson reported that Dr. Inungu did not know what happened to the funds, but that he was looking into it.

15. On or about October 27, 2020, Dr. Inungu held a meeting with Kim and told Kim that he is not to report any concerns with the research funds, or any other issue, to Dean Masterson and that all issues need to come only to him.

16. Starting in December 2020, students within the Masters of Public Health Program began reporting to Kim that they were receiving random direct deposits into their accounts without the necessary contract with the Office of Research and Graduate Studies. This was an improper use of the Department's funds.

17. Kim told the students that this was not something that he could address, and that the matter should be brought to the attention of the administration of the College of Health Sciences.

18. The affected students then reported the matter to Dean Masterson.

19. On or about January 8, 2021, Dr. Inungu sent an email to the Department of Public Health faculty stating in part that the Department staff needed to discuss allegations and issues that had been brought to the Dean of the College of Health Sciences.

20. On February 2, 2021, Dr. Inungu held a meeting with the Department faculty in which he informed them of the allegations that had been made regarding the misuse of funds and told the faculty to not make any reports to the Dean and that all reports must be made only to him.

21. In the February 2 meeting, Dr. Inungu further stated that "we know who made these reports" and warned the staff "not to bring this nasty culture of reporting".

22. On March 19, 2021, CMU served an "Article 16" notice on Kim.

23. An Article 16 notice is CMU's required notice to a faculty member that they are being targeted for discharge.

24. Kim was forced to hire an attorney using his own funds to defend against the baseless charges in the Article 16 notice; once Kim's attorney became involved, CMU quickly withdrew its attempt to fire him.

25. On September 29, 2021, representatives of CMU contacted the Central Michigan Police Department and asked them to investigate Kim in his office on campus. The campus police quickly cleared Kim and his office upon their arrival.

26. On or about October 7, 2021 Kim requested a meeting with Dr. Greg Zimmerman, the Associate Dean of the College of Health Professionals to discuss the September 29, 2021 incident where the police were called to Kim's office.

27. On or about October 13, 2021 Dr. Zimmerman met with Kim, but refused to discuss the September 29, 2021 incident, and instead focused the meeting on criticism of Kim for his act of informing students that they should report their concerns about misuse of funds to the administration of the College of Health Professionals.

28. During the spring semester of 2022, Kim applied for a promotion to the position of Associate Professor at CMU.

29. In May 2022, Kim's promotion application was denied; Kim appealed that denial to the Dean of the College of Health Professionals.

30. In July 2022, Kim's appeal was denied.

31. Also during the spring semester of 2022, and specifically in March 2022, Kim tested positive for, and had symptoms of, Covid-19.

32. As a result of his Covid-19 diagnosis and symptoms, Kim had to cancel several classes that he was teaching that semester.

33. In the fall semester of 2022, Kim applied for tenure.

34. Simultaneously with his tenure application, Kim also applied for re-appointment as an Assistant Professor at CMU for the 2024-2025 school year.

35. Kim met all of the requirements for both tenure and re-appointment.

36. Kim's record of teaching, research and service all exceeded what is required for obtaining tenure at CMU.

37. Non-Asian professors at CMU were granted tenure despite being less qualified.

38. Non-Korean professors at CMU were granted tenure despite being less qualified.

39. Non-Asian professors at CMU were promoted despite being less qualified.

40. Non-Korean professors at CMU were promoted despite being less qualified.

41. Non-Asian professors at CMU were re-appointed to their position despite being less qualified.

42. Non-Korean professors at CMU were re-appointed to their position despite being less qualified.

43. In or about May 2023, CMU denied Plaintiff's application for tenure.

44. In or about May 2023, CMU denied Plaintiff's application for re-appointment as a non-tenured Assistant Professor, discharging him from his employment effective August 2024.

45. CMU's decisions in May 2023 were based, at least in part, on Kim's cancellations of classes in March 2023 when he contracted Covid-19.

46. CMU's decisions in May 2023, were based, at least in part, on Kim's reporting of suspected illegal activity.

## COUNT I
## VIOLATION OF 42 USC §1983
## FIRST AMENDMENT

47. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

48. Acting under the color of state law, CMU promulgated and carried out the official policies, orders and directives leading to the failure to promote, failure to grant tenure and termination of Kim's employment, with wanton and reckless disregard for the civil and constitutional rights of Plaintiff, including his fundamental right to freedom of speech and freedom of assembly as guaranteed by the First Amendment to the United States Constitution.

49. Kim's opposition to the policies and procedures of CMU constitute protected speech under the First Amendment to the United States Constitution.

50. Kim's statements criticizing the actions of CMU, a governmental entity, constitute protected speech under the First Amendment to the United States Constitution.

51. Kim's opposition to the policies and procedures of CMU and Kim's statements criticizing the actions of CMU were significant and motivating factors in the decisions to deny Kim tenure, to deny Kim a promotion and to discharge him from his employment.

52. CMU retaliated against Kim for his protected speech by denying him tenure, denying his promotion application and discharging him from his employment.

53. As a direct and proximate result of Defendant's violations of 42 USC §1983, Kim has suffered damages, including but not limited to: lost past and future wages, lost past and future employment benefits, loss of earning capacity, emotional distress and attorney fees.

## COUNT II
## VIOLATION OF MICHIGAN'S WHISTLEBLOWER'S PROTECTION ACT

54. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

55. Kim engaged in protected activity as that term is defined by Michigan's Whistleblower's Protection Act, MCL 15.361, et. seq. (WPA)

56. Kim reported suspected illegal activity to multiple administrators at CMU, which is a public body as that term is defined by the WPA.

57. CMU discharged, failed to promote and failed to grant tenure to, and otherwise discriminated against Kim.

58. There is a causal connection between the adverse employment actions taken by CMU against Kim and his protected activity.

59. As a direct and proximate result of CMU's violations of the WPA, Kim has suffered damages as fully set forth in paragraph 53 of this Complaint.

## COUNT III
## VIOLATION OF MICHIGAN PUBLIC POLICY

60. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

61. CMU discharged, failed to grant tenure and failed to promote Plaintiff for making an internal report of suspected illegal activity.

62. Michigan has a well-established public policy of encouraging reports of suspected illegal activity, including internal reports of suspected illegal activity.

7

63. It is a violation of Michigan's public policy for an employer to take adverse employment action against an employee because the employee made an internal report of suspected illegal activity.

64. There is a causal connection between Kim's internal report of suspected illegal activity and the adverse employment action taken against him.

65. As a direct and proximate result of CMU's violation of Michigan public policy, Plaintiff has suffered damages as fully set forth in paragraph 53 of this Complaint.

## COUNT IV
## VIOLATION OF COVID-19 EMPLOYMENT RIGHTS ACT
## MCL 419.401, et. seq.

66. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

67. Plaintiff was an employee of CMU as that term is defined by the Covid-19 Employment Rights Act.

68. Plaintiff was infected with Covid-19 as that term is defined by the Covid-19 Employment Rights Act.

69. Plaintiff displayed the principal symptoms of Covid-19 as that term is defined by the Covid-19 Employment Rights Act.

70. Plaintiff was required to complete his isolation period following his Covid-19 diagnosis, pursuant to the Covid-19 Employment Rights Act.

71. Plaintiff was required to complete his isolation period following the development of his primary symptoms of Covid-19, pursuant to the Covid-19 Employment Rights Act.

72. Defendant discharged, disciplined or otherwise retaliated against Plaintiff for his compliance with the Covid-19 Employment Rights Act, in violation of MCL 419.403.

73. As a direct and proximate result of Defendant's violation of the Covid-19 Employment Rights Act, Plaintiff suffered damages as fully set forth in paragraph 53 of this Complaint.

## COUNT V
## VIOLATION OF MICHIGAN'S ELLIOTT LARSEN CIVIL RIGHTS ACT
## RACE AND NATIONAL ORIGIN DISCRIMINATION

74. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

75. Plaintiff is an employee of CMU as that term is defined by Michigan's Elliott Larsen Civil Rights Act, MCL 37.2101, et. seq. (ELCRA)

76. CMU is an employer as that term is defined by the ELCRA.

77. Plaintiff is qualified for the position of Assistant Professor at CMU.

78. Plaintiff is qualified for the position of Associate Professor at CMU.

79. Plaintiff is qualified for a tenured professorship at CMU.

80. Plaintiff is a member of a protected class based on his race, Asian.

81. Plaintiff is a member of a protected class based on his national origin, Korean.

82. Plaintiff suffered adverse employment actions as more fully described above.

83. Other CMU employees who were not members of Plaintiff's protected classes were treated more favorably than Plaintiff.

84. Plaintiff's race was a significant and motivating factor in the adverse employment actions that CMU took against him.

85. Plaintiff's national origin was a significant and motivating factor in the adverse employment actions that CMU took against him.

86. Plaintiff was denied promotion when other, less qualified professors, who are not Asian nor Korean, were granted promotion.

87. Plaintiff was denied tenure when other, less qualified professors, who are not Asian nor Korean, were granted tenure.

88. Plaintiff was denied re-appointment as a non-tenured Assistant Professor when other, less qualified professors, who are not Asian nor Korean were granted re-appointment.

89. As a direct and proximate result of CMU's violations of the ELCRA, Plaintiff has suffered damages as fully set forth in paragraph 53 of this Complaint.

WHEREFORE, Plaintiff Andrew Kim prays that this Honorable Court enter a judgment in his favor against Defendant Central Michigan University in an amount that this Court deems fair and just, plus costs, interest and attorney fees.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of the within cause.

STEMPIEN LAW, PLLC

*/s/ Eric Stempien*
By: Eric Stempien (P58703)
Attorney for Plaintiff

Dated: June 30, 2023